UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 05-109-KSF

ACCEPTANCE INSURANCE CO.                                                                                          PLAINTIFF

V.                                           **OPINION & ORDER**

EQUITY INSURANCE MANAGERS, INC.                                                                      DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the parties' cross-motions for summary judgment [DE ## 31, 33].

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In the present case, plaintiff Acceptance Insurance Company ("Acceptance") seeks a declaration that it owes no indemnity to defendant Equity Insurance Managers, Inc. ("Equity") for defense costs incurred by Equity in a separate lawsuit filed in West Virginia (hereinafter referred to as the "West Virginia Federal Action"). Both Acceptance and Equity were named as defendants in the West Virginia Federal Action, which involved a coverage claim on an insurance policy brokered by Equity and issued by Acceptance to an entity known as Behavioral Health Associates ("BHA"). Equity seeks indemnity from Acceptance based on both contractual and common law agency theories. Acceptance denies that the parties' contract provides for indemnity under the present circumstances and further argues that common-law indemnity is inapplicable.

Equity and Acceptance entered into a General Agency Agreement (the "Agreement") under which Equity acted as the agent for Acceptance for certain insurance coverages in West Virginia, issuing policies there on behalf of Acceptance. Equity issued an Acceptance

commercial general liability ("CGL") policy to BHA, a mental health facility in West Virginia. A patient at BHA's facility, David Johnson, died and his estate (the "Johnson Estate") filed suit against BHA in West Virginia state court. Acceptance denied coverage, citing a policy exclusion for "professional services." The Johnson Estate obtained a default judgment against BHA, which later settled with the Johnson Estate and assigned its rights under the Acceptance policy to the Johnson Estate.

In November of 2001, the Johnson Estate sued Acceptance and Equity in West Virginia federal district court (this matter is the "West Virginia Federal Action"). In the original complaint, the Johnson Estate asserted that the policy provided coverage; that Acceptance had breached the commercial general liability policy, breached its duty to defend, and breached its duty of good faith and fair dealing; that Acceptance had violated the West Virginia Unfair Trade Practices Act ("UTPA"); and that it had engaged in a civil conspiracy. The Johnson Estate also asserted causes of action against Equity for unlawful procurement of an insurance policy in violation of state law; fraud and civil conspiracy; and violation of the UTPA as to issuance of the policy and as to general business practices.

At first, Acceptance retained counsel to jointly defend itself and Equity. According to Equity, approximately two years into the litigation, the Johnson Estate developed a new theory of the case that Equity's issuance of the Acceptance CGL policy had violated additional insurance code provisions and filed an amended complaint asserting a number of allegations in support of its position that Equity was not licensed to transact insurance in West Virginia.[1] After the

---

[1] The Johnson Estate alleged in the Amended Complaint that Equity had engaged in other illegal and fraudulent conduct in issuing the policy, including violating West Virginia law by employing a "solicitor" in connection with the policy; not being licensed as an agent for Acceptance in West Virginia; soliciting, marketing, selling, and transacting business in violation

amended complaint was filed, Acceptance declined to provide any further defense for Equity.

In the West Virginia Federal Action, the district court ultimately determined that Acceptance owed coverage under the policy and had breached its duty to defend BHA in the state court action. It also held that any wrongful conduct on the part of Equity had not resulted in any damages to the Johnson Estate, as the estate's damages were cured by a finding against Acceptance that there was coverage under the policy. The district court also concluded that the Johnson Estate lacked standing because "there [was] no causal connection between [the estate's] injuries and Equity's conduct in brokering the sale of the policy issued by Acceptance."

Acceptance ultimately resolved its claim with the Johnson Estate. Thereafter, Equity demanded reimbursement from Acceptance for defense costs in West Virginia Federal Action in an amount exceeding $200,000. This action followed, wherein Acceptance seeks a declaration that it does *not* owe Equity for the defense costs Equity incurred in the West Virginia Federal Action.

## II. CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A. Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine

---

of West Virginia law; engaging in unfair trade practices; and engaging in a civil conspiracy to conceal from BHA that the policy was illegal. According to Acceptance, Equity's alleged unlawful acts and practices were entirely "separate and distinct" from the denial of coverage question involving Acceptance.

whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. Id. at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

### B. Contractual Indemnity

#### 1. The Parties' Arguments

Equity asserts that the Agreement clearly and unambiguously required Acceptance to defend Equity in the West Virginia Federal Action. Since Acceptance failed to do so, it must now indemnify Equity, as its liability for that obligation had already been expressly determined in the West Virginia Federal Action.

The Agreement provides that Acceptance will defend and indemnify Equity for defense

costs in any policyholder action "for damages . . . caused by acts or omissions of [Acceptance,] provided [Equity] has not primarily caused or contributed to such liability by [its] own acts or omissions."  Equity argues that the judgment entered in the West Virginia Federal Action expressly holds that no acts or omissions of Equity caused any damages – primarily, secondarily, or otherwise – to BHA.  Thus, that issue is *res judicata* as to the parties and Acceptance cannot now challenge this finding of no liability on the part of Equity.  Equity argues that it was Acceptance's error – its wrongful refusal to defend the insured, BHA, and its wrongful denial of coverage – that triggered all claims and losses in the present case.

Acceptance argues that Equity's alleged unlawful acts and practices vis-a-vis BHA were "separate and distinct" from the denial of coverage by Acceptance.  Acceptance argues that the summary judgment obtained by Equity in the West Virginia Federal Action was premised solely on a finding that any wrongful conduct on its part had not resulted in any damages to the Johnson Estate.  Thus, there was no determination by the district court that the estate's claims against Equity were without merit.

Acceptance also argues that the indemnity clause in the Agreement is not applicable to the factual situation that gave rise to the West Virginia Federal Action.  Equity was not acting pursuant to its authority under the Agreement when it issued the CGL policy to BHA, as the Agreement appointed Equity general agent to issue commercial auto insurance *only*.  Because Equity acted without authority in issuing the CGL policy, it did so outside the scope of the Agreement and, thus, there is no indemnity.

Acceptance also argues that, under the indemnity provision, it is only required to indemnify Equity against liability "imposed on [it] by law[.]"  Equity incurred no liability imposed on it by law because it escaped liability via entry of summary judgment in its favor.

-5-

Further, Acceptance owes no indemnity if Equity has primarily caused or contributed to its liability. Whatever liability Equity incurred was primarily caused by its own alleged wrongdoing, and its defense costs were incurred defending against its own allegedly illegal and fraudulent activities uncovered by the Johnson Estate. Finally, Acceptance argues that the indemnity provision required Equity to maintain errors and omission ("E&O") coverage, which is primary over any indemnification. Thus, Equity can only collect from Acceptance to the extent its out-of-pocket defense costs were not covered by its E&O insurer. Here, Equity only paid $25,000 out of pocket, so that is the upper limit required of Acceptance.

### 2.   *Choice of Law*

An initial issue for the Court's consideration is what law to apply in this matter. The Agreement contains a choice-of-law provision selecting Nebraska law. Because this matter is before the Court on diversity jurisdiction, the Court must apply the choice-of-law provisions of the forum state or Kentucky. Andersons, Inc. v. Consolidated Inc., 348 F.3d 496, 501 (6th Cir. 2003).

Under Kentucky law, § 187 of the *Restatement (Second) of Conflict of Laws* governs contractual choice-of-law provisions. Wallace Hardware Co. v. Abrams, 223 F.3d 382, 397 (6th Cir. 2000). As noted by the Sixth Circuit,

> Under § 187, the parties' choice of law should be honored unless (1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or (2) "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest." Restatement (Second) of Conflict of Laws § 187.

Id. at 398. As in Wallace, the first prong of the test is easily satisfied. Acceptance is located in Nebraska and Equity elected to do business with this Nebraska corporation. Thus, there is a

sufficiently reasonable basis for the parties' choice of Nebraska law. As for the "fundamental policy" prong, neither party has asserted that the law of Kentucky would be contrary to a fundamental policy of Nebraska.

Equity concedes that Nebraska law applies in the present case, in accordance with the contractual provision to that effect. Acceptance offers no opinion on choice of law. Therefore, the Court will apply the state law of Nebraska.

### 3. *Discussion*

The indemnification provision contained in the parties' Agreement states as follows:

> [Acceptance] will defend and indemnify [Equity] against liability, including cost of defense and settlements, imposed on [it] by law for damages sustained by policyholders and caused by acts or omissions of [Acceptance], provided [Equity] has not primarily caused or contributed to such liability by [its] own acts or omissions.

(Agreement, ¶ IV(A). ) The Agreement also contains the following provision regarding errors and omissions insurance coverage:

> [Equity] agrees to maintain errors and omissions coverage for [itself] and all those for whom [it] is responsible. The E & O coverage will be primary over any indemnification, but is not designed to remove responsibility for indemnification from [Equity] or [Acceptance].

(Id., ¶ IV(C).)

The Court finds that the Agreement obligates Acceptance to indemnify Equity for its defense costs related to the West Virginia Federal Action. It is obvious that the reason the BHA filed the West Virginia Federal Action was because Acceptance denied coverage to BHA based on the "professional services" exclusion and refused to defend BHA in the West Virginia state action initiated by the Johnson Estate. Thus, the defense costs incurred by Equity were to defend

against liability caused by "acts or omissions of [Acceptance.]"  BHA's claims against Equity appear simply to have been filed in the alternative – in other words, if BHA could not recover against Acceptance under the CGL policy, it would then seek recovery from Equity directly for its alleged failure to follow West Virginia insurance law in brokering the policy for BHA.

Further, it cannot be said that Equity "primarily caused or contributed to such liability by [its] own acts or omissions[,]" given the court's finding in the West Virginia Federal Action that there was no causal connection between BHA's injuries and Equity's conduct in brokering the sale of the policy ultimately issued by Acceptance.  Had Acceptance provided coverage and a defense to BHA in the first instance, as it was ultimately held liable to do, Equity would have never had the need to defend itself in the West Virginia Federal Action.  Further, the allegations of wrongdoing against Equity were nothing more than that – allegations.  The only decisions made by the court in the West Virginia Federal Action were that Acceptance was liable and that Equity was not.

The Agreement requires Acceptance to pay Equity's defense costs when those costs are caused by acts or omissions of Acceptance and where the liability is not primarily caused or contributed to by Equity's own acts or omissions. Both of these requirements have been satisfied in the present case.  Based on this, the indemnification provision in the Agreement requires Acceptance to pay Equity's defense costs.

Acceptance argues that it is relieved from any indemnification obligation because Equity was not acting pursuant to its authority under the Agreement when it issued a CGL policy to BHA, since the Agreement authorized Equity to issue only commercial automobile insurance in West Virginia on behalf of Acceptance.  Thus, Acceptance argues, the Agreement has no applicability to this factual situation.

The Court rejects this argument for two reasons.  First, a reading of the Agreement indicates that Equity was not limited to the issuance of commercial automobile policies.  The Appointment and Commission Schedule ("Schedule") appoints Equity to act as Acceptance's agent in West Virginia with respect to both commercial auto and other types of policies:

> The Company [Acceptance] hereby appoints the Agent [Equity] in the following states:
> **Kentucky, Tennessee, Virginia and West Virginia, Ohio**
> **(Virginia and West Virginia – Commercial Auto only)**
>
>                     Unless Individually Quoted Otherwise:
> <u>Line of Insurance</u>          <u>Binding Authority</u>          <u>Commission</u>
> Comm. Auto Liability
>     . . . .
>     WV (Coal Trucks Only)     Yes                         21%
> . . . .
> Excess General Liability        Submit                      20%
> . . . .

(Agreement, Schedule.)  The "unless individually quoted otherwise" language necessarily means that Acceptance would consider writing any of the listed types of insurance, including a CGL policy, if Equity were to first submit it for consideration and approval.  In other words, Equity could write commercial auto liability policies without prior approval, but had to submit CGL policies for prior approval.  That is apparently what happened in the present case – Equity submitted the CGL policy on BHA to Acceptance, *which could have denied the request* but which instead chose to write the insurance.  Under Nebraska law, a contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.  <u>Kluver v. Deaver</u>, 714 N.W.2d 1, 5 (Neb. 2006).  Based on the clear contract language quoted above, Equity did not act beyond the authority granted to it by the

Agreement, so this cannot be a basis to deny indemnification.² Second, Acceptance cites no law in support of its argument that the indemnification provision is nullified if Equity acts beyond the Agreement's authority. Thus, this argument should be rejected.

Acceptance also argues that it owes no indemnity to Equity unless and until Equity incurs liability "imposed upon it by law," which did not occur in this case because Equity escaped liability in the West Virginia Federal Action by entry of summary judgment in its favor. This argument is not well taken. Acceptance seems to be arguing that it has no obligation under the indemnification provision unless and until Equity loses its case. Thus, if, as in the present case, Equity successfully defends itself, it is not entitled to defense costs, even if Acceptance is at fault. This interpretation would render the indemnification clause a nullity, which could not have been the parties' intent. To paraphrase another court, it makes little sense to say that Acceptance agreed to pay Equity's attorneys' fees when suits have been unsuccessfully defended and it has had to make heavy indemnity payments, but that it has not agreed to pay attorneys' fees when suits have been successfully defended and it has been protected against heavy indemnity payments. National Sur. Corp. v. First Nat'l Bank of Midland, 431 S.W.2d 353, 355 (Tex. 1968). Thus, this argument must be rejected.

Finally, Acceptance argues that it owes no contractual indemnity to Equity because Equity was required to obtain E&O coverage such that even if Acceptance owes Equity indemnity, it only does so to the extent that Equity's out-of-pocket defense costs were not covered by its E&O insurer. Since Equity only paid out $25,000 of its defense costs, that is the

---

² To the extent the Agreement is ambiguous, Nebraska law dictates that the Agreement "is to be construed most strongly against the party preparing it, in this case, [Acceptance]." Anderson v. Nashua Corp., 560 N.W.2d 446, 451 (Neb. 1997).

-10-

limit of what the Agreement would require Acceptance to indemnify. The express language of the Agreement negates this argument. The Agreement expressly states that any E&O coverage "is not designed to remove responsibility for indemnification from [Acceptance.]" Thus, while the existence of E & O coverage may affect the amount of indemnification, it does not absolve Acceptance of the responsibility of indemnification.[3]

      C.      **Common-Law Indemnity**

The Court's determination that Equity can recover under the contract providing for indemnity obviates any right to recover under the common law theory of implied indemnity, since the parties have already determined for themselves how and under what circumstances the losses at issue should be allocated.

**III.    CONCLUSION**

Based on the foregoing, the Court finds that Acceptance is obligated to indemnify Equity for its defense costs in the West Virginia Federal Action. There are still a number of issues left to be determined before final judgment can be entered. For example, Acceptance denies the reasonableness and necessity of the attorneys' fees incurred by Equity in the West Virginia Federal Action. Acceptance also asserts that pre-judgment interest is not available under Nebraska law. The Court must engage in a "lodestar" analysis to determine the amount of fees to be awarded. Therefore, the Court will order further briefing on the issues relating to the amount of the judgment to be entered in Equity's favor.

---

[3] Although this is not a legal basis to uphold the indemnity provision, the Court finds it interesting that Acceptance initially undertook the defense of Equity in the West Virginia Federal Action. It does not now, nor has it apparently ever, suggested that this was in error.

Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY

ORDERS that

(1) the motion of defendant Equity for summary judgment [DE #31] is GRANTED;

(2) the motion of plaintiff Acceptance for summary judgment [DE #33] is DENIED;

(3) no later than thirty (30) days from the date of entry of this Order, Equity SHALL FILE its brief and evidence in support of its damages in this matter;

(4) no later than fifteen (15) days thereafter, Acceptance SHALL FILE a response brief;

(5) no later than eleven (11) days thereafter, Equity SHALL FILE its reply brief in further support of its damages;

(6) thereafter the matter shall stand submitted for decision and entry of judgment, and

(7) the trial scheduled for March 20, 2007 is SET ASIDE.

This February 23, 2007.



Signed By:

*Karl S. Forester* KSF

United States Senior Judge